IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

JIMMY FRANK CAMERON (AIS# 105591)　　　*
　　　　　　　　　　　　　　　　　　　　　*
　　　　Plaintiff,　　　　　　　　　　　　*
　　　　　　　　　　　　　　　　　　　　　*
v.　　　　　　　　　　　　　　　　　　　　*　CASE NO. 2:07-CV-684-WKW
　　　　　　　　　　　　　　　　　　　　　*
TAHIR SIDDIQ,　　　　　　　　　　　　　　*
　　　　　　　　　　　　　　　　　　　　　*
　　　　Defendant.　　　　　　　　　　　　*

## SPECIAL REPORT OF DEFENDANT
## PRISON HEALTH SERVICES, INC.

COMES NOW the Defendant, Tahir Siddiq, M.D., by and through counsel, and in response to the Plaintiff's Complaint and this Court's Order, presents the following Special Report with regard to this matter.

## I. INTRODUCTION

Jimmy Frank Cameron (AIS# 105591) is currently a prisoner at the Bullock County Correctional Facility in Union Springs, Alabama. Cameron has filed a Complaint against Dr. Tahir Siddiq, a Prison Health Services' physician, arising out of allegedly improper treatment for prostate problems in July 2007. Cameron claims Dr. Siddiq gave him a "violent exam" in response to complaints about prostate pain. Cameron demands over $100,000 for damages relating to pain and suffering.

As directed, Prison Health Services and Dr. Siddiq have undertaken a review of the Plaintiff Cameron's claims to determine the facts and circumstances relevant to this case. At this time, this Defendant submits this Special Report, which is supported by a certified copy of Cameron's medical records pertaining to this incident [Exhibit "A"], the

Affidavit of Dr. Tahir Siddiq [Exhibit "B"], and the Affidavit of Brandee Player, H.S.A., regarding Cameron's failure to comply with the Prison Litigation Reform Act [Exhibit "C"].    These evidentiary materials demonstrate that Cameron has been provided appropriate medical treatment for his prostate complaints and that Cameron failed to comply with the requirements of the Prison Litigation Reform Act prior to initiating this litigation.

## II. NARRATIVE SUMMARY OF FACTS

At all pertinent times, Jimmy Frank Cameron (AIS# 105591) was incarcerated at the Bullock County Correctional Facility.    [Exhibit "A"].    Cameron has been seen and evaluated by Dr. Tahir Siddiq, a member of the facility's medical staff, and has been provided appropriate care each and every time he has registered health complaints at the facility.

In this particular case, Cameron complains that he went to see Dr. Siddiq on July 19, 2007. [Plaintiff's Complaint, Section V]. According to his Complaint, Cameron claims that Dr. Siddiq asked the Plaintiff whether he could check his rectum.    Id. According to an attachment to his Complaint, Cameron claims Dr. Siddiq gave him "a vicious exam" and claims this was done deliberately.    [Plaintiff's Supplemental Statement to Complaint].

On July 2, 2007, Cameron filed a Sick Call Request, asking to see a physician about getting Flomax for an enlarged prostate.  [Exhibit "A"].  As a result of this request, Prison Health Services' medical personnel referred him to Dr. Siddiq for further treatment.  Another Sick Call Request completed by Cameron on July 18, 2007, asked

to see the doctor again about obtaining Flomax. [Exhibit "B"]. On July 19th, Dr. Siddiq provided treatment for Cameron's prostate. A rectal exam proved to be normal and Siddiq found no signs of a urinary tract infection or obstruction and no mass associated with Cameron's prostate. [Exhibit "A", Exhibit "B"]. Upon completion of the exam, Dr. Siddiq noted a normal prostate exam and recommended that Cameron follow-up, as needed, for his condition. [Exhibit "A"].

During the course of his examination of Mr. Cameron, Dr. Siddiq complied with all professional guidelines concerning a rectal examination. No rectal examination is a pleasant experience and no one wants one done, however, Dr. Siddiq found it necessary in order to check for an enlarged prostate. [Exhibit "B"]. Siddiq's examination revealed the prostate was of normal size and did not have any swelling. [Exhibit "C"]. More importantly, Siddiq did not find his condition to require any medication be prescribed at that time. [Exhibit "B"]. During the examination, Cameron voiced no complaints with respect to the examination he performed and Dr. Siddiq's first notice of any problem associated with this examination was the filing of this lawsuit. [Exhibit "B"].

Prior to initiating his Complaint, Cameron failed to comply with the requirements of the Prison Litigation Reform Act, 42 U.S.C. §1997e(h), in filing forms and/or appeal forms contesting the condition and treatments provided by Dr. Siddiq in relation to the July 19th exam. At no time did Cameron even notify physicians or Prison Health Services' staff of his complaint prior to initiating this litigation. [Exhibit "C"].

## III. **DEFENSES**

The Defendant asserts the following defenses to the Plaintiff's claims:

1.    The Plaintiff/prisoner failed to comply with the mandatory requirements of the Prison Litigation Reform Act of 1995, 42 U.S.C. §1997(e), et seq. ("PLRA") and the PLRA directly applies to require that this matter be dismissed with prejudice for failing to comply with the terms and conditions of grievance procedures concerning medical issues.

2.    The Defendant denies each and every material allegation contained in the Plaintiff's Complaint and demand strict proof thereof.

3.    The Defendant pleads not guilty to the charges in the Plaintiff's Complaint.

4.    The Plaintiff's Complaint fails to state a claim against the Defendant for which relief can be granted.

5.    The Defendant affirmatively denies any and all alleged claims by the Plaintiff.

6.    The Plaintiff is not entitled to any relief requested in the Complaint.

7.    The Defendant pleads the defense of qualified immunity and avers that the actions taken by the Defendant were reasonable and in good faith with reference to clearly established law at the time of the incidents complained of by the Plaintiff.

8.    The Defendant is entitled to qualified immunity and it is clear from the face of the Complaint that the Plaintiff has not alleged specific facts indicating that the Defendant has violated any clearly established constitutional right.

9.    The Defendant cannot be held liable on the basis of respondeat superior, agency, or vicarious liability theories.

10.    The Plaintiff is not entitled to any relief under 42 U.S.C. § 1983.

11.    The allegations contained in the Plaintiff's Complaint against the Defendant sued in his individual capacity, fails to comply with the heightened specificity requirement of Rule 8 in § 1983 cases against persons sued in their individual capacities. See Oladeinde v. City of Birmingham, 963 F.2d 1481, 1485 (11th Cir. 1992); Arnold v. Board of Educ. Of Escambia County, 880 F.2d 305, 309 (11th Cir. 1989).

12.    The Defendant pleads all applicable immunities, including, but not limited to qualified, absolute, discretionary function immunity, and state agent immunity.

13.    The Defendant avers that he was, at all times, acting under color of state law and, therefore, he is entitled to substantive immunity under the law of the State of Alabama.

14.    The Defendant pleads the general issue.

15.    This Court lacks subject matter jurisdiction due to the fact that even if the Plaintiff's allegations should be proven, the allegations against the Defendant would amount to mere negligence which is not recognized as a deprivation of the Plaintiff's constitutional rights.  See Rogers v. Evans, 792 F.2d 1052 (11th Cir. 1986).

16.    The Plaintiff's claims against the Defendant in his official capacity are barred by the Eleventh Amendment to the United States Constitution.

17.    Alabama law provides tort and other remedies for the allegations made by the Plaintiff herein and such remedies are constitutionally adequate.

18.    The Defendant pleads the defense that at all times in treating Plaintiff he exercised the same degree of care, skill, and diligence as other physicians and nursing

staff would have exercised under similar circumstances and that at no time did he act toward the Plaintiff with deliberate indifference to a serious medical need.

19.    The Defendant pleads the affirmative defense that the Plaintiff's Complaint fails to contain a detailed specification and factual description of the acts and omissions alleged to render him liable to the Plaintiff as required by § 6-5-551 of the Ala. Code (1993).

20.    The Defendant pleads the affirmative defenses of contributory negligence and assumption of the risk.

21.    The Defendant pleads the affirmative defense that Plaintiff's damages, if any, were the result of an independent, efficient, and/or intervening cause.

22.    The Defendant pleads the affirmative defense that he is not responsible for the policies and procedures of the Alabama Department of Corrections.

23.    The Defendant pleads the affirmative defense that the Plaintiff has failed to mitigate his own damages.

24.    The Defendant pleads the affirmative defense that he is not guilty of any conduct which would justify the imposition of punitive damages against him and that any such award would violate the United States Constitution.

25.    The Defendant adopts and asserts all defenses set forth in the Alabama Medical Liability Act § 6-5-481, et seq., and § 6-5-542, et seq.

26.    The Plaintiff has failed to comply with 28 U.S.C. § 1915 with respect to the requirements and limitations inmates must follow in filing in forma pauperis actions in federal court.

27.    Pursuant to 28 U.S.C. § 1915 A, this Court is requested to screen and dismiss this case, as soon as possible, either before or after docketing, as this case is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks money damages from the Defendant who is a state officer entitled to immunity as provided for in 42 U.S.C. § 1997 (e)(c).

28.    The Defendant asserts that the Plaintiff's Complaint is frivolous and filed in bad faith solely for the purpose of harassment and intimidation and requests this Court pursuant to 42 U.S.C. § 1988 to award Defendant reasonable attorney's fees and costs incurred in the defense of this case.

29.    The Plaintiff's claims are moot because the events which underlie the controversy have been resolved. See Marie v. Nickels, 70 F., Supp. 2d 1252 (D. Kan. 1999).

## IV. ARGUMENT

A.    **Because Cameron Failed to Follow the Required Grievance Procedures for Assessing Medical Complaints Prior to Filing His Lawsuit, the Prison Litigation Reform Act of 1995 Requires the Immediate Dismissal, with Prejudice, of His Complaint..**

Congress passed the Prison Litigation Reform Act of 1995 ("PLRA") in order to control frivolous prisoner lawsuits.  The Act contains multiple, mandatory provisions that require the dismissal of complaints identical to those asserted by Mr. Cameron.

The PLRA defines a prisoner as follows:

> As used in this section, the term "prisoner" means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program.  42 U.S.C. §1997e(h).

7

Cameron admits to being incarcerated in his complaint, therefore, he meets the definition of "prisoner" as defined by the PLRA. See Boyd v. Corrections Corporation of America, 380 F.3d 989 (6th Cir. 2004).

The crux of the PLRA requires a prisoner to exhaust all internal, administrative remedies prior to filing suit. The PLRA requires that the Court on its motion or the motion of a defendant dismiss any action with respect to prisoner conditions or medical treatment upon failure to exhaust these remedies. 42 U.S.C. §1997e(a). This provision states the following:

> **(a)    Applicability of Administrative Remedies.**
> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted. (emphasis added).
>
> **(b)    Failure of State to Adopt or Adhere to Administrative Grievance Procedure.**
> The failure of a State to adopt or adhere to an administrative grievance procedure shall not constitute the basis for an action under 1997a or 1997c of this Title.
>
> **(c)    Dismissal**
> The Court shall on its own motion or on the motion of  a party dismiss any action brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility if the court is satisfied that the action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief.
>
> 42 U.S.C. § 1997e(a)

"Administrative remedies" pursuant to this Act constitute prison or jail grievance procedures such as those identified in this Special Report. Before filing suit, the

prison/plaintiff must submit his claim through this procedure and the grievance must address the specific issue upon which the suit is based. Failure to strictly follow these procedures requires dismissal of the action. Even if the prisoner/plaintiff has no knowledge regarding the existence of the procedures, this does not relieve the requirement. See Zolicoffer v. Scott, 55 F. Supp. 2d 1372 (N.D. Ga. 1999), affirmed without opinion (252 F.3d 440 (11th Cir. 2001).

In this particular case, Cameron failed to follow available, required administrative procedures that existed within the Bullock County Correctional Facility. [Exhibit "C" – Affidavit of Brandee Player, H.S.A.]. These procedures required Cameron to seek administrative relief of his claim before seeking court intervention regarding his claim. His failure to follow these internal procedures concerning his medical grievances require his claim be dismissed with prejudice. Woodford v. NGO, 126 S. Ct. 2378, 165 L.Ed.2d 368 (2006).

The Woodford case is extremely instructive because the United States Supreme Court took the opportunity to clarify issues concerning the Prison Litigation Reform Act. In Woodford, a California state prisoner challenged a disciplinary act but did so in an untimely manner, violating California's Prison Grievance System. Subsequently, the prisoner sued the system in federal court, but the district court granted the Department's Motion to Dismiss, stating the prisoner had not fully exhausted his administrative remedies, pursuant to the Prison Litigation Reform Act. On appeal, the Ninth Circuit reversed, claiming that because no administrative remedies remained available to the prisoner, he had "not exhausted them" amongst other reasons.

On appeal, the United States Supreme Court reversed the Ninth Circuit and affirmed the dismissal of the prisoner's complaint. The Court's opinion focused extensively on the "exhaustion" of available remedies and concluded that whether procedural deficiencies existed or whether a prisoner is poorly educated and unfamiliar with such proceedings, it is <u>a requirement that administrative remedies be followed prior to litigation ensuing in federal court.</u> <u>Id.</u> At 2387, 2388, 2390, 2392-2393.

Cameron's case is no different from that outlined in <u>Woodford</u>. Cameron must exhaust internal, administrative remedies before seeking redress for his complaints within the legal system. Adhering to these procedures serves a two-fold interest, (1) it allows Cameron the opportunity to advise correctional officers or healthcare employees regarding his concerns and (2) it permits internal procedures to address and alleviate concerns raised by prisoners through this process. More importantly, it eliminates frivolous litigation by giving both the prisoner and the correctional facility the opportunity to be aware of complaints and address them prior to the expense of litigation.

**B.    The Plaintiff Has Failed To Prove That The Defendant Acted With Deliberate Indifference To Any Serious Medical Need.**

A court may dismiss a complaint for failure to state a claim if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations in the complaint. <u>Romero v. City of Clanton</u>, 220 F. Supp. 2d 1313, 1315 (M.D. Ala., 2002), (<u>citing</u>, <u>Hishon v. King & Spalding</u>, 467 U.S. 69, 73, (1984). "Procedures exist, including Federal Rule of Civil Procedure 7(a), or Rule 12(e), whereby the trial court may "protect the substance of qualified immunity," <u>Shows v. Morgan</u>, 40 F. Supp. 2d 1345, 1358 (M.D. Ala., 1999). A careful review of Cameron's

medical records reveals that he has been given appropriate medical treatment at all times. [See Exhibits "A" & "B"].

The Plaintiff's Complaint fails to state a claim against the Defendant with the detail and specificity required by the Alabama Medical Liability Act, ALA. CODE § 6-5-551, which provides as follows:

> In any action for injury, damages, or wrongful death, whether in contract or tort, against a health care provider for breach of the standard of care, whether resulting from acts or omissions in providing health care, or the hiring, training, supervision, retention or termination of care givers, the Alabama Medical Liability Act shall govern the parameters of discovery and all aspects of the action. The plaintiff shall include in the complaint filed in the action a detailed specification and factual description of each act and omission alleged by plaintiff to render the health care provider liable to plaintiff and shall include when feasible and ascertainable the date, time, and place of the act or acts. The plaintiff shall amend his complaint timely upon ascertainment of new or different acts or omissions upon which his claim is based; provided, however, that any such amendment must be made at least 90 days before trial. Any complaint which fails to include such detailed specification and factual description of each act and omission shall be subject to dismissal for failure to state a claim upon which relief may be granted. Any party shall be prohibited from conducting discovery with regard to any other act or omission or from introducing at trial evidence of any other act or omission. (emphasis added).

ALA. CODE § 6-5-551.

The Plaintiff's Complaint fails to state a claim against the Defendant because it fails to include a "detailed specification and factual description" of each act and omission alleged by Plaintiff to render the Defendant liable to Plaintiff; in particular, said Complaint fails to include the required statement of "the date, time, and place of the act or acts" of alleged malpractice, as required by the Act. See ALA. CODE § 6-5-551 (emphasis added).

In order to state a cognizable claim under the Eighth Amendment, Cameron must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. See Estelle v. Gamble, 429 U.S. 97, 106 (U.S. 1976); McElligott v. Foley, 182 F.3d 1248, 1254 (11th Cir. 1999); Palermo v. Corr. Med. Servs., 148 F. Supp. 2d 1340, 1342 (S.D. Fla. 2001). In order to prevail, Cameron must allege and prove that he suffered from a serious medical need, that the Defendant was deliberately indifferent to his needs, and that he suffered harm due to deliberate indifference. See Marsh v. Butler County, 268 F.3d 1014, 1058 (11th Cir. 2001) and Palermo, 148 F. Supp. 2d at 1342. "Neither inadvertent failure to provide adequate medical care nor a physician's negligence in diagnosing or treating a medical condition states a valid claim of medical mistreatment under the Eighth Amendment." (citations omitted). [Id.].

Not every claim by a prisoner that medical treatment has been inadequate states an Eighth Amendment violation. Alleged negligent conduct with regard to inmates' serious medical conditions does not rise to the level of a constitutional violation. Alleged medical malpractice does not become a constitutional violation merely because the alleged victim is a prisoner. See Estelle, 429 U.S. at 106, McElligott, 182 F.3d at 1254, Hill, 40 F.3d 1176, 1186 (11th Cir. 1994), Palermo, 148 F. Supp. 2d at 1342. Further, a mere difference of opinion between an inmate and the physician as to treatment and diagnosis cannot give rise to a cause of action under the Eighth Amendment. Estelle, 429 U.S. at 106-108.

The Defendant may only be liable if it had knowledge of Cameron's medical condition, Hill, 40 F. 3d at 1191, and acted intentionally or recklessly to deny or delay

access to his care, or to interfere with treatment once prescribed. Estelle, 429 U.S. at 104-105. Obviously, Cameron cannot carry his burden.  The evidence submitted with this Special Report clearly shows that the Defendant did not act intentionally or recklessly to deny or delay medical care, or to interfere with any treatment which was prescribed or directed. The evidence demonstrates, to the contrary, that PHS employees applied the appropriate standard of care to the treatment of Mr. Cameron. and did not give him a "violent exam" in response to complaints about prostate pain. [Plaintiff's Complaint].

The Defendant is, also, entitled to qualified immunity from all claims asserted by Cameron in this action.  There is no argument that the Defendant was not acting within the scope of his discretionary authority. See Eubanks v. Gerwen, 40 F. 3d 1157, 1160 (11th Cir. 1994); see also Jordan v. Doe, 38 F. 3d 1559, 1566 (11th Cir. 1994).  Because the Defendant has demonstrated that he was acting within the scope of his discretionary authority, the burden shifts to Cameron to show that the Defendant violated clearly established law based upon objective standards.  Eubanks, 40 F. 3d at 1160.  The Eleventh Circuit requires that before the Defendant's actions can be said to have violated clearly established constitutional rights, Cameron must show that the right allegedly violated was clearly established in a fact-specific, particularized sense. Edwards v. Gilbert, 867 F.2d 1271, 1273 (11th Cir. 1989), aff'd in pertinent part, rev'd in part on other grounds, sub nom., Edwards v. Okaloosa County, 5 F. 3d 1431 (11th Cir. 1989).

The Eleventh Circuit further requires that the inquiry be fact specific, and that officials will be immune from suit if the law with respect to their actions was unclear at

13

the time the cause of action arose, or if a reasonable person could have believed that their actions were lawful in light of clearly established law and information possessed by the individual.  See Brescher v. Von Stein, 904 F.2d 572, 579 (11th Cir. 1990) (quoting, Anderson v. Creighton, 483 U.S. 635, 640, (U. S. 1987)).  The question that must be asked is whether the state of the law in 2006 gave the Defendant fair warning that its alleged treatment of Cameron was unconstitutional. Hope v. Pelzer, 536 U.S. 730, 741 (U.S. 2002).

Therefore, to defeat summary judgment, Cameron must be able to point to cases with "materially similar" facts, within the Eleventh Circuit, that would alert the Defendant to the fact that its practice or policy violates his constitutional rights. See Hansen v. Soldenwagner, 19 F.3d 573, 576 (11th Cir. 1994).  In order for qualified immunity to be defeated, preexisting law must "dictate, that is truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what the defendant is doing violates federal law in the circumstances." Lassiter v. Alabama A & M Univ., Bd. of Trustees, 28 F. 3d 1146, 1151 (11th Cir. 1994). The Defendant submits that there is no case law from the United States Supreme Court, the Eleventh Circuit Court of Appeals, or District Courts sitting within the Eleventh Circuit showing that, under the facts of this case, it was clearly established that these alleged actions violated Cameron's constitutional rights.  All of Cameron's medical needs have been addressed or treated. [See Exhibits "A" & "B"]. The Defendant has provided Cameron with appropriate medical care at all times and his allegations regarding a "violent exam" are untrue.

## V. <u>CONCLUSION</u>

The Plaintiff's Complaint is due to be dismissed on its face, and is, further, disproven by the evidence now before the Court. All of the Plaintiff's requests for relief are without merit. The Defendant has demonstrated both through substantial evidence and appropriate precedent that there is not any genuine issue of material fact relating to a constitutional violation, and that he is, therefore, entitled to a judgment in his favor as a matter of law. The Plaintiff's submissions clearly fail to meet his required burden.

Accordingly, the Defendant requests that this Special Report be treated and denominated as a Motion to Dismiss and/or a Motion for Summary Judgment and that this Honorable Court either dismiss the Plaintiff's Complaint, with prejudice, or enter a judgment in his favor.

Respectfully submitted,

/s/ PAUL M. JAMES, JR.
Alabama State Bar Number JAM017
Attorney for Defendant Tahir Siddiq, M.D.
RUSHTON, STAKELY, JOHNSTON &
GARRETT, P.A.
P. O. Box 270
Montgomery, AL 36101-0270
Telephone: (334) 206-3148
Fax: (334) 481-0817
E-mail: pmj@rsjg.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has been served by U.S. Mail this the 25th day of October, 2007, to:

Mr. Jimmy Frank Cameron (AIS # 105591)
Bullock County Correctional Facility, C-1-7-A
P. O. Box 5107
Union Springs, AL  36089

/s/  PAUL M. JAMES, JR. (JAM017)
Attorney for Defendant
Tahir Siddiq, M.D.

# EXHIBIT A

# A F F I D A V I T

**STATE OF ALABAMA**                    )
                                       )
_____**COUNTY**              )


I, _T. Ellerbee_____ hereby certify and affirm that I am

a _MEDICAL CLERK_ at _STATON Healthcare_ :

that I am one of the custodians of medical records at this institution; that the

attached documents are true, exact, and correct photocopies of certain medical records

maintained here in the institution medical file of one _Cameron, Jimmy_,

AIS # _105591_ ; and that I am over the age of twenty-one years and am

competent to testify to the aforesaid documents and matters stated herein.

    I further certify and affirm that said documents are maintained in the usual and

ordinary course of business at _STATON_ :

and that said documents (and the entries therein) were made at, or reasonably near, the

time that by, or from information transmitted by, a person with knowledge of such acts,

events, and transactions referred to therein are said to have occurred.

    This, I do hereby certify and affirm to on this the _19_ day of

_October_ in the year _2007_.

                                   _D. Ellerbee_

SWORN TO and SUBSCRIBED before me this _19_ day of _October, 2007_.

                                   _Annie Latimore_
                                   Notary Public

                                   _12/06/2008_
                                   My Commission Expires:

## ALABAMA DEPARTMENT OF CORRECTIONS

## PROBLEM LIST

INMATE NAME _Cameron, Simmy_ AIS# 105591

Medication Allergies: _Motrin_ D.O.B: 12-8-048

Medical: Chronic (Long-Term) Problems
Roman Numerals for Medical/Surgical

Mental Health Code: SMI  HARM  HIST  NONE
Capital Letter for Psychiatric Behavior

| Date Identified | Chronic Medical Problem | Mental Health Code | Date Resolved | Provider Initials |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

**If Asthmatic label:  Mild – Moderate – or Severe.**

60108-AL

## ALABAMA DEPARTMENT OF CORRECTIONS

## PROBLEM LIST

INMATE NAME _Cameron, Jimmy_          AIS# _10SS91_

Medication Allergies: ~~Ibuprofen~~

Medical: Chronic (Long-Term) Problems
　　　　Roman Numerals for Medical/Surgical

Mental Health Code: SMI HARM HIST NONE     _SB, MD. 7/28/05_
　　　　Capital Letter for Psychiatric Behavior     _MH-0_     _5/8/06_ _/cc_

| Date Identified | Chronic Medical Problem | Mental Health Code | Date Resolved | Provider Initials |
|---|---|---|---|---|
| 3-18-05 | PPD-Ø mm | | | |
| 6/15/05 | PUD — | | | SR. |
| 7/28/05 | MH code A HIST | | | SB, MD. |
| 4/28/06 | Therace Tonsylloma | | | B/MD |
| 5/9/06 | HTN | | | |
| — " — | GERD ? | | | |
| — " — | Compression Fx T7 T8 T11 L1 | | | |
| — " — | HEMIGLOSECTOMY FOR Adeno Ca | | | |
| — " — | HEP C Ab · excluded 6/2/06 | | | |
| — " — | Multiple subcut lipomas | DEBULK'g | | |
| 1/10/06 | Osteopenia Vertebral bodies | | | |

**If Asthmatic label: Mild – Moderate – or Severe.**

_Tongue Cancer — Hemiglossectomy_

_10/28/06_

## Annual Vaccination Record

### PPD

| Date Given mo/da/yr | Site Given L-FA or R-FA | Nurse Signature | Date PPD Read mo/da/yr | Results | Nurse Signature | If positive MD or CRNP notified & orders written |
|---|---|---|---|---|---|---|
| 3/13/07 | LFA | | 3/15/07 | 0mm | | |
| | | | | | | |
| | | | | | | |

### Hepatitis A/B

_____ Refusal Signed _____ Date _____ Nurse Signature

_____ Refusal Signed _____ Date _____ Nurse Signature

_____ Refusal Signed _____ Date _____ Nurse Signature

| | 0 Days | | | 7 Days | |
| Facility | 1st Dose Date | Nurse Signature | 2nd Dose Date | Nurse Signature |
|---|---|---|---|---|
| | | | | |

| | 21-30 Days | | | Booster at 12 months | |
| Facility | 3rd Dose Date | Nurse Signature | 4th Dose Date | Nurse Signature |
|---|---|---|---|---|
| | | | | |

### Hepatitis B

_____ Refusal Signed _____ Date _____ Nurse Signature

_____ Refusal Signed _____ Date _____ Nurse Signature

_____ Refusal Signed _____ Date _____ Nurse Signature

| | 0 Day | | | 30 Day | |
| Facility | 1st Dose Date | Nurse Signature | 2nd Dose Date | Nurse Signature |
|---|---|---|---|---|
| | | | | |

| | 6 Months | |
| Facility | 3rd Dose Date | Nurse Signature |
|---|---|---|
| | | |

### Tetanus

| Date Given mo/da/yr | Site Given | Nurse Signature | Comments |
|---|---|---|---|
| | | | |

Cameron, Jimmy
105591          12/30/48

Page 1 of 2

## Annual Vaccination Record

### Influenza

_____ Refusal Signed _____ Date _____ Nurse Signature

_____ Refusal Signed _____ Date _____ Nurse Signature

_____ Refusal Signed _____ Date _____ Nurse Signature

| Date Given mo/da/yr | Site Given | Nurse Signature |
|---|---|---|
| | | |
| | | |
| | | |

### Pneumoccal

_____ Refusal Signed _____ Date _____ Nurse Signature

_____ Refusal Signed _____ Date _____ Nurse Signature

_____ Refusal Signed _____ Date _____ Nurse Signature

| Date Given mo/da/yr | Site Given | Nurse Signature |
|---|---|---|
| | | |
| | | |
| | | |

**\* All vaccination forms must be moved to the newest volume of the medical record.**

Cameron, Jimmy    12/30/48

105591

EVALUATION & Referral Flow Sheet                                    Attachment D

| PATIENT NAME | ID NUMBER | DATE | FACILITY |
|---|---|---|---|
| Cameron, James | 105591 | 2/19 | DCG |

**Step 1**
- ☐ Patient is positive for the Hepatitis C virus. (Quantitative HCV obtained.)
- ☐ Patient given Schering-Plough or Pegasys "Medication Guide," as appropriate.
- ☐ Provider educates patient on Hepatitis C infection and treatment. The education has been documented.

PROVIDER SIGNATURE: W. Ingel Sw        DATE: 5/10/07

**Step 2**
Initiate eligibility process
- ☐ Patient signed Informed Consent or refusal for determining eligibility for Interferon/Ribavirin treatment.
- ☐ Obtain labs as required to determine eligibility. (If no other absolute exclusion criteria are present.)

PROVIDER SIGNATURE: _____        DATE: _____

**Step 3**
**Absolute Exclusion Criteria***

- ☐ Age ≤ 18 or ≥ 60
- ☐ Remaining incarceration time ≤ 24 months.
- ☐ Presence of an Axis I diagnosis that is not controlled and stable as determined by the treating psychiatrist.
- ☐ History of solid organ transplant.
- ☐ Presence or history of an autoimmune disorder.
- ☐ Presence or history of decompensated cirrhosis, presence or history of ascites or encephalopathy (albumin ≤ 3.2 gm/dl, bilirubin > 3.0 gm/dl).
- ☐ CBC results outside acceptable limits (Hgb ≤ 12 females, ≤ 13 for males; WBC > 3,000; ANC ≤ 1,500 & platelets ≤ 100,000/mm).
- ☐ Creatinine ≥ 1.7 or creatinine clearance ≤ 50 ml/minute.
- ☐ Normal ALT (<2.0 times normal at 0, 3 and 6 months).
- ☐ Positive pregnancy test.
- ☐ Active TB
- ☐ Auto Immune Disease e.g. – Lupus, Graves Disease, R.A., M.S., Myasthenia Gravis
- ☐ Cancer – not in remission
- ☐ Hemoglobinopathies

* "No further evaluation should be completed so long as the absolute criterion exists."

**Relative Exclusion Criteria ***

- ☐ Hepatitis B Co-infection
- ☐ Diabetes – poorly controlled with Hgb. A1C ≥ 9.0
- ☐ Ischemic Cardiac Disease or Cerebrovascular Disease
- ☐ Hypertension – poorly controlled
- ☐ CHF
- ☐ Peripheral Vascular Disease – Symptomatic
- ☐ COPD – severe
- ☐ Seizures – poorly controlled
- ☐ Active Thyroid Disease
- ☐ Active Gout
- ☐ Significant CNS Trauma – recent within the past six months
- ☐ Poor adherence to treatment including ≤ 80% of clinic visits and medications, to the extent the inmate made the choices.
- ☐ Alcohol and illicit drug use within one year.
- ☐ Interferon/Ribavirin sensitivity.
- ☐ Life expectancy < 10 years.

**The provider is required to review relative exclusion criteria with the Regional Medical Director prior to proceeding with further evaluation.

**Step 4**
**Non-Formulary Request for Genotype Testing**
- ☐ Obtain HCV genotype. Provider submits Non-formulary Lab Request form with a copy of this form to the Regional Medical Director. Approval must be received prior to ordering tests.

STAFF SIGNATURE: _____        DATE: _____

**Step 5**
**Risk Stratification and Treatment Options**
- ☐ Provider reviews test results with patient to determine risk stratifications and therapeutic options.
- ☐ Provider submits an Outpatient RMD Consultation form for a liver biopsy, if indicated, with a copy of this form to the Regional Medical Director. Approval must be received prior to scheduling the biopsy.

PROVIDER SIGNATURE: _____        DATE: _____

**Step 6**
**Initiation of Treatment**
- ☐ Final eligibility determination completed. Liver biopsy results have been reviewed with the Regional Medical Director.
- ☐ Provider reviews Schering-Plough or Pegasys "Medication Guide" with the patient and provides education on Interferon/Ribavirin treatment.
- ☐ Patient signs informed consent for Interferon/Ribavirin treatment, a second time.
- ☐ Provider completes Formulary Exception Request form and orders medication treatment.

PROVIDER SIGNATURE: _____        DATE: _____

**Step 7**
**Safety and Efficacy Monitoring**
- ☐ Provider orders appropriate hematological and biochemical testing and viral load testing as required on the HCV treatment flow sheet. The provider addresses compliance at each visit and asks specific questions for depression and suicidal ideation.

PROVIDER SIGNATURE: _____        DATE: _____

HCV Program – Alabama Department of Corrections
Evaluation

March 2004

Q 3-6 months

Name: _Cameron, Glenn_ DOB: _12/36/B_ AIS#: _105591_ R/S _WM_

## PATIENT HISTORY

Date of Diagnosis: _5/9/06_
Current Meds: _Zenorm 25 N / QC_
Diet/exercise history: _Low Sodium_                          Compliant?    Yes    (No)

_Family History _Smoker _Diabetes _Alcoholism _Drug Abuse _Obesity _CHF _Hyperlipidemia _Renal Disease

**Risk factors (check all that apply)**

| VARIABLE | Date (initial exam) | Date | Date _5/10/07_ |
|---|---|---|---|
| BP/Weight/Pulse CP | 138/64/74/73 | 126/74/70 | 130/80/73 Cl |
| Exertional Dyspnea | NO | | NO |
| Orthopnea | NO | NO | NO |
| Fundi exam annually | NO | | NO |
| General Appearance | yes | | NO |
| Heart | Healthy | Healthy | Healthy |
| JVD/Carotid Bruits | Reg WNL | Reg WNL | Reg WNL |
| Lungs | NO / NO | | NO |
| Abdomen | B/L Clear | B/L Clear | B/L Clear |
| Periph. Pulses/edema | Non distended | Non distended | Non distended |

## LABS

| | Date | Date | Date |
|---|---|---|---|
| BMP per MD/NP order | 9/29/06 | 9/29/06 | 9/29/06 |
| DPII annually | 9/29/06 | 9/29/06 | 9/29/06 |
| UA Dipstick (on-site) | 9/29/06 | 9/29/06 | 9/29/06 |
| EKG | 3/7/06 | 3/7/06 | 3/2/06 |
| CXRAY | 8/28/06 | 8/28/07 | 8/28/07 |
| Disease Control | Good/Fair/Poor Improved/Worsened | Good/Fair/Poor Improved/Worsened | Good/Fair/Poor Improved/Worsened |

## PLAN

| | Date | Date | Date |
|---|---|---|---|
| Patient Edu/Training | 11/27/06 | 2/9/07 | 5/10/07 |
| Completed Master Problem Sheet | yes | yes | yes |
| Next F/U | 2/20/06 | 5/19/01 | 8/10/0 |
| Signature | | | |

## SHORT TERM GOALS

| 1 | LONG TERM GOALS |
|---|---|
| 2 | 1 |
|  | 2 |

Comments: E: Instructed on the need for
Compliance c Meds; Exercise
and diet
E

Q 3-6 months

Name: Cameron, Jimmy    DOB: 12/30/48    AIS#: 105591    R/S: WM

## PATIENT HISTORY

Date of Hep-C Antibody Positivity: 5/9/06
Current Meds: N/A    Compliant?    Yes ___ No ___

### Risk factors (check all that apply)
IVDA    Alcoholism    Tatoos    Transfusions

| VARIABLE | Date (initial exam) | Date | Date 5/10/07 |
|---|---|---|---|
| BP/Pulse/RR/T/Wgt | 130/ 73 20 98 174 | 120 78 99 174 | 116 62 99 173 |
| Drowsiness/Weakness | NO | NO | NO |
| Nausea/vomiting | NO | NO | NO |
| Abd pain/swelling | NO | NO | NO |
| Blood in stool | NO | NO | NO |
| General Appearance | Healthy | Healthy | Healthy |
| Icterus/Spiders | | | |
| Mental Status/Asterixis | A+O X 3 | A+O X 3 | yes |
| Heart | | | A+O X 3 |
| Lung | Reg WNL | | Reg WNL |
| Liver/Ascites | Clear | | Clear |
| Edema | none | | none |

## LABS

| | Date | Date | Date |
|---|---|---|---|
| INR | pending | pending | 1.08 3/8/07 |
| DPII per protocol | 9/29/06 | 9/29/06 | 12/6/06 |
| Abd US | N/A | N/A | N/A |
| Liver Biopsy/Genotype | N/A | N/A | N/A |
| Fe/TIBC/Ferritin | N/A | pending | N/A |
| Hep BsAg/Hep C VL | positive | positive | 3/8/07 positive |
| Disease Control | Good/Fair/Poor Improved/Worsened | Good/Fair/Poor Improved/Worsened | Good/Fair/Poor Improved/Worsened |

## PLAN

| | Date | Date | Date |
|---|---|---|---|
| Hep B Vaccination | NO | NO | NO |
| Patient Edu/Training | 11/27/06 | 2/19/07 | 5/10/07 |
| Completed Master Problem Sheet | yes | yes | yes |
| Next F/U | 2/19/06 | 5/29/07 | 3/8/07 |
| Signature | | | |

| SHORT TERM GOALS | LONG TERM GOALS |
|---|---|
| 1 | 1 |
| 2 | 2 |

Comments: Ē Instructed on s/s to report
Ē function    on Hep C treatment

PRISON HEALTH SERVICES

Physician's Chronic Care Clinic

Date: 8-39-06 _____ Time: 19:10/pm _____ Facility: Hami A + I _____

Check all applicable CIC's being evaluated: X Card/HTN __DM__GI__ID__PUL__SZ__TB

**SUBJECTIVE:**  Back pain

97 ² 02

**OBJECTIVE:**  BP 128/62 HR 67 RR 20 Temp 76.8 Wt 171 Peak Flow _____
NOTE: PE findings for CIC patients should be disease-specific and focused on prevention of end-organ
Complications: DM-eye ground, skin, cardiopulmonary, extremities; HTN/Card-eye grounds,
Cardiopulmonary, abdomen, extremities,; ID-all systems; PUL-HEENT,
Cardiopulmonary, A/P ratio; SZ-HEENT, neurological; GI-abdomen.

A+O x 3, No acute distress;
HEENT - WNL -
Resp. CV: RRR Ō murmur, Ø edema to ↓ ext.; ⊕ pedal pulses
Lungs: Clear

**ASSESSMENT:**  Circle the appropriate Degree of Control and Status for each clinic monitored during today's
Visit. Degree of Control: G=Good, F=Fair, P=Poor
Status: I=Improved, S=Stable, W=Worsened

| DM | | | HTN/CARD | | | SZ | | | PUL | | | ID | | | GI | | | OTHER | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Degree of Control | | | Degree of Control | | | Degree of Control | | | Degree of Control | | | Degree of Control | | | Degree of Control | | | Degree of Control | | |
| G | F | P | G | (F) | P | G | F | P | G | F | P | G | F | P | G | F | P | G | F | P |
| Status | | | Status | | | Status | | | Status | | | Status | | | Status | | | Status | | |
| I | S | W | I | (S) | W | I | S | W | I | S | W | I | S | W | I | S | W | I | S | W |

**PLAN:**  Cont. reg Rx;  Saw MD on 8/14 for back pain.
Inst. on ↓ na diet + exercise for HTN - to see MD
on Sick Call for back pain if no better.   Labs next

**F/U:**  Routine 90 days: ✓ _____ Other _____

Problem List Updated:  Yes  (No) 17.21

_____
Istidham CRNP
Physician/NP/PA

Cameron     Jimmy
NAME

Male
GENDER

w
RACE

105591
AIS#

12-30-48
DOB

(Revised 5/18/05)

## V Evaluation & Referral Flow Sheet

| PATIENT NAME _Cameron, Jimmy_ | ID NUMBER _105591_ | DATE _6/2/06_ | FACILITY _Hamilta_ |
|---|---|---|---|

**Step 1**

Patient is positive for the Hepatitis C virus. (Quantitative HCV obtained.)
- ☐ Patient given Schering-Plough or Pegasys "Medication Guide," as appropriate.
- ☐ Provider educates patient on Hepatitis C infection and treatment. The education has been documented.

PROVIDER SIGNATURE:_____ DATE:_____

**Step 2**

Initiate eligibility process
- ☐ Patient signed Informed Consent or refusal for determining eligibility for Interferon/Ribavirin treatment.
- ☐ Obtain labs as required to determine eligibility. (If no other absolute exclusion criteria are present.)

PROVIDER SIGNATURE:_____ DATE:_____

**Step 3**

**Absolute Exclusion Criteria***

- ☐ Age ≤ 18.
- ☐ Remaining incarceration time ≤ 36 months.
- ☐ Presence of a mental health diagnosis that has not been cleared by psychiatrist.
- ☐ History of solid organ transplant.
- ☐ Presence or history of an autoimmune disorder.
- ☐ Presence or history of decompensated cirrhosis, ascites or encephalopathy (albumin ≤ 3.2 gm/dl, bilirubin > 3.0 gm/dl).
- ☐ CBC results outside acceptable limits (Hgb ≤ 12 females, ≤ 13 for males; WBC > 3,000; ANC 1,500 & platelets ≤ 100,000/mm).
- ☐ Creatinine ≥ 1.7 or creatinine clearance ≤ 50 ml/minute
- ☐ Patients with uncontrolled diabetes HgbA1C ≥ 8.0
- ☒ Persistently normal ALT (≤ 2.0 times normal at 0, 3 and 6 months).
- ☐ Positive pregnancy test.

\* No further evaluation should be completed once an absolute exclusion criterion is identified. The patient should be followed in a chronic care clinic at least every 90 days.

**Relative Exclusion Criteria***

- ☐ Age ≥ 60.
- ☐ < 80% compliance with clinic visits and medication.
- ☐ Alcohol and illicit drug use within one year.
- ☐ Presence of non-hepatic disease such as coronary artery disease, unstable angina, CHF, pulmonary disease, poorly controlled seizure disorder or malignant neoplasm.
- ☐ Abnormal TSH.
- ☐ Ferritin/TIBC ≥ 50% (iron overload).
- ☐ HIV positive.
- ☐ Abnormal INR.
- ☐ Interferon/Ribavirin sensitivity.
- ☐ Life expectancy < 10 years.

\*\*The provider is required to review relative exclusion criteria with the Regional Medical Director prior to proceeding with further evaluation.

**Step 4**

**Non-Formulary Request for Genotype Testing**
- ☐ Obtain HCV genotype. Provider submits Non-formulary Lab Request form with a copy of this form to the Regional Medical Director. Approval must be received prior to ordering tests.

STAFF SIGNATURE:_____ DATE:_____

**Step 5**

**Risk Stratification and Treatment Options**
- ☐ Provider reviews test results with patient to determine risk stratifications and therapeutic options.
- ☐ Provider submits an Outpatient RMD Consultation form for a liver biopsy, if indicated, with a copy of this form to the Regional Medical Director. Approval must be received prior to scheduling the biopsy.

PROVIDER SIGNATURE:_____ DATE:_____

**Step 6**

**Initiation of Treatment**
- ☐ Final eligibility determination completed. Liver biopsy results have been reviewed with the Regional Medical Director.
- ☐ Provider reviews Schering-Plough or Pegasys "Medication Guide" with the patient and provides education on Interferon/Ribavirin treatment.
- ☐ Patient signs informed consent for Interferon/Ribavirin treatment, a second time.
- ☐ Provider completes Formulary Exception Request form and orders medication treatment.

PROVIDER SIGNATURE:_____ DATE:_____

**Step 7**

**Safety and Efficacy Monitoring**
- ☐ Provider orders appropriate hematological and biochemical testing as necessary and a HCV RNA-qualitative assay six months after treatment to assess sustained virologic response.

PROVIDER SIGNATURE:_____ DATE:_____

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

JIMMY CAMERON (AIS #105591),            *

                                          *

     Plaintiff,

                                          *

V.                                                                        2:07-CV-684-WKW

                                          *

DR. TAHIR SIDDIQ,

                                          *

     Defendant.

                                          *

## AFFIDAVIT OF TAHIR SIDDIQ, M.D.

**BEFORE ME,** Luke Stuart, a notary public in and for said County and State, personally appeared **TAHIR SIDDIQ, M.D.**, and being duly sworn, deposed and says on oath that the averments contained in the foregoing are true to the best of his ability, information, knowledge and belief, as follows:

"My name is Tahir Siddiq. I am a medical doctor and am over twenty-one years of age. I am personally familiar with all of the facts set forth in this affidavit. I have been licensed as a physician in Alabama since 1996, and have been board certified in internal medicine since 1996. I have served as the Medical Director for Bullock Correctional Facility in Union Springs, Alabama, since 1997. Since November 3, 2003, my employment at Bullock Correctional Facility has been with Prison Health Services, Inc. ("PHS"), the company which currently contracts with the Alabama Department of Corrections to provide medical services to inmates.

Jimmy Cameron (AIS# 105591) is an inmate currently incarcerated at Bullock County Correctional Facility. I am familiar with Mr. Cameron's medical history and conditions, and have seen and evaluated him as a patient on numerous occasions.

It is my understanding that Mr. Cameron has made a complaint in this case relating to a rectal examination I performed on him in July of this year. It is further my understanding that Mr. Cameron has made an allegation that this examination was done in a "vicious and revengeful" manner. Mr. Cameron's allegations in this regard are untrue as I have acted appropriately at all times as it relates to his medical treatment and care.

I examined Mr. Cameron on July 19, 2007. At that time, Mr. Cameron stated he had an enlarged prostate and wanted a prescription for Flomax. I performed a rectal examination using a jelly lubricant which is standard procedure. My examination of Mr. Cameron was done in a professional manner and it should be noted that a rectal examination is not a pleasant experience and no one wants one done, but it is necessary in checking for an enlarged prostate. My examination revealed that his prostate was of normal size and he did not have any swelling. There was no sign of urinary obstruction and I did not detect any masses. My assessment was that Mr. Cameron had a normal prostate exam and he was to follow-up as needed. I did not prescribe any medication for him at that time.

At the time of Mr. Cameron's examination on July 19th, he did not voice any complaints with respect to the examination I performed. This lawsuit was the first time I became aware of any alleged complaint made by Mr. Cameron relating to my examination of his prostate.

Based on my review of Mr. Cameron's medical records, and on my personal knowledge of the treatment provided to him, it is my medical opinion that all of his medical conditions and complaints have been evaluated in an appropriate fashion at Bullock County Correctional Facility. At all times, he has received appropriate medical treatment for his health conditions from me and the other PHS personnel at Bullock. It is my opinion that the appropriate standard

of care has been adhered to at all times in providing medical care, evaluation, and treatment to this inmate.

At no time have I or any of the PHS staff at Bullock County Correctional Facility denied Mr. Cameron any needed medical treatment, nor have we ever acted with deliberate indifference to any serious medical need of Cameron. At all times, Cameron's known medical complaints and conditions have been addressed as promptly as possible under the circumstances."

Further affiant sayith not.

_____
TAHIR SIDDIQ, M.D.


STATE OF ALABAMA                    )

COUNTY OF _____                   )

I, ___Luke Stewart___, a Notary Public in and for said State and County, hereby certify that TAHIR SIDDIQ, M.D. who being known to me and who being duly sworn, and whose name is signed to the foregoing document, acknowledged before me on this date that being first informed of the contents of said document, having read the same, and understanding its purpose and effect, voluntarily executed the same upon the above-stated date.

SWORN TO and SUBSCRIBED BEFORE ME on this the 24TH day of ___August___, 2007.

_____
NOTARY PUBLIC
My Commission Expires: June 2010


(NOTARIAL SEAL)

# EXHIBIT C

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

JIMMY FRANK CAMERON, (AIS #105591),    *

                                     *

      Plaintiff,

                                     *

V.                                    2:07-CV-684-WKW

                                     *

DR. SIDDIQ, et al.

                                   *

      Defendants.

                                   *

### <u>AFFIDAVIT OF BRANDEE PLAYER, H.S.A.</u>

**BEFORE ME,** _Luke Stewart_ , a notary public in and for said County and State, personally appeared **BRANDEE PLAYER, H.S.A.**, and being duly sworn, deposed and says on oath that the averments contained in the foregoing are true to the best of her ability, information, knowledge and belief, as follows:

"My name is Brandee Player. I am over the age of twenty-one and am personally familiar with all of the facts set forth in this Affidavit. I hold a Master's Degree in Health Services Administration from Barry University in Miami Shore, Florida. I have worked as the Prison Health Administrator at Bullock County Correctional Facility in Union Springs, Alabama, since November 6, 2006. Since this date, I have been employed as the Health Service Administrator (H.S.A.) for Bullock County Correctional Facility by Prison Health Services, Inc., the company which currently contracts with the Alabama Department of Corrections to provide medical services to inmates.

Prison Health Services, Inc. (PHS) has established a simple two-step procedure for identifying and addressing inmate grievances at Bullock County Correctional Facility. If an inmate has a grievance regarding a healthcare issue he must submit to the healthcare unit a grievance form. These are standard forms that may be acquired in the healthcare unit or from an inmate's supervising officer in his dormitory. The grievance form allows an inmate to communicate any healthcare related concern by placing the form in the in house mail system or sick call box to be forwarded to the healthcare unit. I have also been directly handed a grievance form from an inmate. I subsequently review the concern and respond via in house mail.

If the inmate is unsatisfied with my response, he may request a grievance appeal form from the healthcare unit. This form allows an inmate to again voice his concerns relating to the healthcare issue addressed with the grievance form. After the inmate has submitted the formal grievance, I will either respond again in writing, or, if warranted, I will meet with the inmate face-to-face in a final attempt to address his concerns verbally.

It is my understanding that Jimmy Frank Cameron has filed suit in this matter alleging that Dr. Tahir Siddiq administered improper medical care to him. However, Mr. Cameron has failed to exhaust Bullock's informal grievance procedure relating to the receipt of medical care for his alleged condition. Specifically, Mr. Cameron has not submitted all appropriate and required forms. As such, the healthcare unit at Bullock County Correctional Facility has not been afforded the opportunity to resolve Mr. Cameron's medical complaints prior to filing suit.

Further affiant sayeth not.

BRANDEE PLAYER, H.S.A.

STATE OF ALABAMA          )
                          )
COUNTY OF _____ )

    Sworn to and subscribed before me on this the _____24_____ TH day of
AuGUST_____, 2007.

_____
Notary Public

_____

My Commission Expires:

JuNE 2010
_____