IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| JIMMY FRANK CAMERON, #105591, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 2:07-CV-684-WKW |
| | )                      [WO] |
| | ) |
| TAHIR SIDDIQ, et al., | ) |
| | ) |
|     Defendants. | ) |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

In this 42 U.S.C. § 1983 action, Jimmy Frank Cameron ["Cameron"], a state inmate, challenges the constitutionality of medical treatment provided to him by Dr. Tahir Siddiq during his confinement at the Bullock County Correctional Facility ["Bullock"]. He also complains of actions taken against him by warden Phyllis Billups in August of 2007 upon his transfer to the Draper Correctional Facility ["Draper"].

The defendants filed special reports and supporting evidentiary materials addressing Cameron's claims for relief. Pursuant to the orders entered in this case, the court deems it appropriate to treat the defendants' reports as motions for summary judgment. *Order of October 26, 2007 - Court Doc. No. 38*. Hence, this case is now pending on the defendants' motions for summary judgment. Upon consideration of these motions, the evidentiary materials filed in support thereof and the plaintiff's responses in opposition to the motions, the court concludes that the defendants' motions for summary judgment are due to be

granted.

## I. STANDARD OF REVIEW

To survive the defendants' properly supported motions for summary judgment, Cameron must "go beyond the pleadings and ... designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) (nonmoving party is required to produce "sufficient [favorable] evidence" indicating he is entitled to relief sought). "If the evidence [on which the nonmoving party relies] is merely colorable ... or is not significantly probative ... summary judgment may be granted." *Anderson v. Liberty Lobby*, 477 U.S. at 249-250. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)." *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990). A plaintiff's conclusory allegations similarly do not provide sufficient evidence to oppose a motion for summary judgment. *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995); *Fullman v. Graddick*, 739 F.2d 553, 556-557 (11th Cir. 1984). Thus, when a plaintiff fails to make a showing sufficient to establish the existence of an element essential to his case and on which the plaintiff bears the burden of proof, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts

immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (if on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate).

To demonstrate a genuine issue of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Consequently, where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates that there is no genuine issue of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323-324 (summary judgment is appropriate where pleadings, evidentiary materials and affidavits before the court show there is no genuine issue as to a requisite material fact); *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001) (to establish a genuine issue of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts,

a *pro se* litigant does not escape the burden of establishing a genuine issue of material fact. *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). In this case, Cameron has failed to meet the requisite burden so as to preclude entry of summary judgment in favor of the defendants. *Matsushita*, *supra*.

## II.  DISCUSSION

### A.  The Claims Against Warden Billups

Cameron complains that warden Billups acted with deliberate indifference to his health and safety when she assigned him to a job on the farm despite an alleged debilitating disability and his suffering from hepatitis. Cameron also asserts that Ms. Billups acted in retaliation for his having filed lawsuits against Dr. Siddiq.

Warden Billups adamantly denies the plaintiff's allegations. Specifically, Billups asserts that she acted in accordance with Cameron's medical profile at the time of his job assignment to the farm and, upon being notified of a change in his medical profile, reassigned him to a job compatible with his medical limitations.

> The Plaintiff ... came to job board on August 22, 2007. Prior to this defendant assigning the plaintiff a job, the plaintiff stated to me that he could not work at all and he had Hepatitis C. I asked the plaintiff if he had a medical pink slip stating he could not work. The plaintiff stated, "No, it should be in my file." I phoned the Health Care Unit and ... asked [Michelle Sagers, the Health Service Administrator,] if Inmate Cameron had any medical documentation in his file that he had Hepatitis C and if he had a pink slip stating that he could not work. Ms. Sagers informed me that Inmate Cameron was positive for Hapatitis C in 2006. Ms. Sagers also informed me that there

> was no pink [slip] in Inmate Cameron's file that he could not work. The defendant assigned Inmate Cameron to farm squad #8.... On September 20, 2007, Inmate Cameron showed [me] a medical pink slip that stated he needed a bottom bunk bed and no lifts greater than 10 lbs. for 180 days form 9/7/07-3/7/08. Inmate Cameron again stated ... that he could not work. Warden Billups phoned the Health Care Unit and spoke to Ms. Sagers and asked her if Inmate Cameron had received medical documentation that he could not work. Ms. Sagers stated, "No." Ms. Sagers stated that ... Cameron had a "Free World" doctor's appointment scheduled for September 21, 2007 due to complaints that his back was hurting.... Warden Billups informed Inmate Cameron that he would be assigned to a job on Clean Up until his medical condition was resolved.

*Defendant Billups' Exhibit A to the October 9, 2007 Special Report (Court Doc. No. 33-2) - Affidavit of Phyllis Billups* at 1-2. Defendant Billups also argues that she did not undertake any action against Cameron in retaliation for his filing lawsuits against Dr. Siddiq. *Id*. at 2 ("Warden Billups has never met Dr. Siddiq and did not know who he was until she received a copy of this suit. Warden Billups did not have any input on Inmate Cameron being assigned to Draper or any other institution....").

    1. <u>Deliberate Indifference</u>. Several courts have addressed whether compelling a prisoner to perform physical labor which is beyond his strength and/or constitutes a danger to his health is an act of deliberate indifference. A claim that an inmate's job assignment is beyond ordinary prisoner tasks or is "base, inhuman, or barbaric" alleges a violation of the Eighth Amendment. *Shields v. Hopper*, 519 F.2d 1131, 1132 (5th Cir. 1975). The Eighth Amendment prohibition against cruel and unusual punishment forbids ***knowingly***

5

compelling inmates to perform work which is beyond their strength, dangerous to their lives or health or unduly painful. *Sanchez v. Taggart* , 144 F.3d 1154, 1155 (8th Cir. 1998); *Williams v. Norris,* 148 F.3d 983, 987 (8th Cir. 1998); *Lee v. Sikes*, 870 F.Supp. 1096, 1100 (S.D.Ga. 1994). A correctional official may be held liable under the Constitution for acting with "deliberate indifference" to an inmate's health or safety when the official knows that the inmate faces "a substantial risk of serious harm" and with such knowledge disregards that risk by failing to take reasonable measures to abate it. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). A constitutional violation occurs only when a plaintiff establishes the existence of "a substantial risk of serious harm, of which the official is subjectively aware, ... and [that] the official does not 'respond[] reasonably to the risk'...." *Marsh v. Butler County*, 268 F.3d 1014, 1028 (11th Cir. 2001)(en banc), *quoting Farmer*, 511 U.S. at 844. Thus, in order to survive summary judgment on this claim, the plaintiff is "required to produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendant['s] deliberate indifference to that risk; and (3) causation." *Hale v. Tallapoosa County*, 50 F.3d 1579, 1582 (11th Cir. 1995).

> To be deliberately indifferent, Defendants must have been "subjectively aware of the substantial risk of serious harm in order to have had a '"sufficiently culpable state of mind."'" *Farmer,* 511 U.S. at 834-38, 114 S.Ct. at 1977-80; *Wilson v. Seiter,* 501 U.S. 294, 299, 111 S.Ct. 2321, 2324-25, 115 L.Ed.2d 271 (1991).... Even assuming the existence of a serious risk of harm and causation, the prison official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious `harm exists--and the prison official must also "draw that inference." *Farmer*, 511 U.S. at 837, 114 S.Ct. at 1979.

*Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003).

The evidentiary materials submitted by defendant Billups refute Cameron's conclusory allegation that this defendant acted with deliberate indifference and establish that she acted in a reasonable manner when providing Cameron his job assignments. At the time defendant Billups assigned Cameron to work on the farm, she had no knowledge nor reason to believe that this job assignment subjected Cameron to a risk of serious harm or substantial injury. Moreover, the record in this case is completely devoid of any evidence that defendant Billups had knowledge of specific facts from which an inference could be drawn that a substantial risk of harm existed to Cameron, that the defendant actually drew this inference and thereafter ignored this risk. This court therefore concludes that Cameron has failed to show that defendant Billups acted with deliberate indifference by knowingly compelling him to perform work beyond his strength, dangerous to his life or health, or unduly painful. *Carter*, 352 F.3d at 1350. Thus, the motion for summary judgment with respect to this claim should be granted in favor of defendant Billups.

2. <u>Retaliation</u>. Cameron makes the conclusory allegation that defendant Billups retaliated against him for filing lawsuits against Dr. Siddiq. Billups denies that she acted in a retaliatory manner towards Cameron and maintains that she acted properly in light of the facts available to her regarding Cameron's physical condition. *Defendant Billups' Exhibit A to the October 9, 2007 Special Report (Court Doc. No. 33-2) - Affidavit of Phyllis Billups* at 2.

To present a retaliation claim cognizable under § 1983, a prisoner must demonstrate that (i) he engaged in a constitutionally protected activity, (ii) he suffered adverse treatment simultaneously with or subsequent to such activity, and (iii) a causal connection existed between the protected activity and the adverse action. *Donnellon v. Fruehauf Corporation*, 794 F.2d 598, 600-601 (11th Cir. 1986); *Farrow v. West*, 320 F.3d 1235, 1248 (11th Cir. 2003); *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2nd Cir. 2004); *Morales v. Mackalm*, 278 F.3d 126, 131 (2nd Cir. 2002); *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). Proper assertion of a claim for retaliation requires that a prisoner allege that correctional officials intended to retaliate for his exercise of a right protected under the Constitution and, but for the retaliatory motive, the adverse act complained of would not have occurred. *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995), *cert. denied sub nom Palermo v. Woods*, 516 U.S. 1084, 116 S.Ct. 800, 133 L.Ed.2d 747 (1996). However, it is essential that federal courts "carefully scrutinize retaliation claims" brought by prisoners challenging actions of correctional personnel. *Woods*, 60 F.3d at 1166. "[C]ourts must approach prisoner claims of retaliation with skepticism and particular care. *See Flaherty v. Coughlin,* 713 F.2d 10, 13 (2nd Cir. 1983). This is [necessary because prisoners'] ... claims of retaliation are ... easily fabricated [and] pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration. This is so because virtually any adverse action taken against a prisoner by a prison official--even those otherwise not rising to the level of a constitutional violation--can be characterized [by the prisoner] as a constitutionally

8

proscribed retaliatory act." *Dawes v. Walker*, 239 F.3d 489, 491 (2nd Cir. 2001), *overruled on other grounds*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002).

An inmate has the initial burden of establishing a prima facie case of unlawful retaliation by a preponderance of the evidence, which once established raises a presumption that prison officials retaliated against the inmate. *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981). Merely alleging the ultimate fact of retaliation, however, is insufficient. *Cain v. Lane*, 857 F.2d 1139, 1142, n.6 (7th Cir. 1988); *Woods*, 60 F.3d at 1166. Additionally, conclusory allegations are insufficient to demonstrate the existence of each element requisite to establishing retaliation. *Morales*, 278 F.3d at 131; *Bennett v. Goord*, 343 F.3d 133, 137 (2nd Cir. 2003) (Because prisoner retaliation claims are prone to abuse, "we are careful to require non-conclusory allegations."). If an inmate establishes a prima facie case, the burden then shifts to prison officials to rebut the presumption by producing sufficient evidence to raise a genuine issue of fact as to whether the prison official retaliated against the inmate. This may be done by the prison official articulating a legitimate, non-retaliatory reason for the adverse decision or action, which is clear, reasonably specific and worthy of credence. The prison official has a burden of production, not of persuasion, and thus does not have to persuade a court that he or she actually was motivated by the reason advanced. *Burdine*, *supra*. Once the prison official satisfies this burden of production, the inmate then has the burden of persuading the court by sufficient

and admissible evidence that the proffered reason for the adverse decision is a pretext for retaliation. *Id*.

Cameron merely makes the conclusory assertion that defendant Billups retaliated against him for filing lawsuits against Dr. Siddiq. Initially, the court notes that this claim is, at best, a tenuous assertion of retaliation. Nevertheless, defendant Billups has demonstrated through relevant admissible evidence that she had no knowledge of any previous lawsuits filed by Cameron and that the actions about which Cameron complains resulted solely from her effort to provide Cameron a job assignment within his physical capabilities. As this court must "carefully scrutinize retaliation claims" arising from adverse actions of correctional personnel, *Woods*, 60 F.3d at 1166, and evaluate such claims "with skepticism and particular care[,]" *Dawes*, 239 F.3d at 491, it is clear that Cameron's conclusory allegation of retaliation is insufficient to show that the reason proffered by defendant Billups, a reason substantiated by the evidentiary materials, is pretextual. Consequently, defendant Billups is entitled to summary judgment on the retaliation claim as Cameron has failed to present any evidence which establishes a causal relationship between his protected activity and the challenged adverse actions. *Farrow*, 320 F.3d at 1249.

### B. The Claims Against Dr. Siddiq

Cameron challenges the constitutionality of medical treatment provided to him by Dr. Siddiq. Specifically, Cameron asserts that upon seeking treatment for an enlarged

prostate Dr. Siddiq subjected him to a "vicious rectal examination" and attempted to prescribe antibiotics contradictory to his Hepatitis C condition. *Plaintiff's Complaint - Court Doc. No. 1* at 4. Cameron contends that Dr. Siddiq undertook these actions in retaliation for his having filed previous lawsuits challenging the medical treatment provied to him. In response to the claims presented in the complaint, defendant Siddiq asserts that he conducted the rectal examination in an appropriate manner and argues that this case is due to be dismissed because Cameron failed to properly exhaust his administrative remedies as directed by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a).

The PLRA requires exhaustion of available administrative remedies before a prisoner can seek relief in federal court on a 42 U.S.C. § 1983 complaint. Specifically, 42 U.S.C. § 1997e(a) directs that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." "Congress has provided in § 1997(e)(a) that an inmate must exhaust irrespective of the forms of relief sought and offered through administrative remedies." *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Exhaustion of all available administrative remedies is a precondition to litigation and a federal court cannot waive the

exhaustion requirement. *Booth*, 532 U.S. at 741; *Alexander v. Hawk*, 159 F.3d 1321, 1325 (11th Cir. 1998); *Woodford v. Ngo*, ___ U.S. ___, 126 S.Ct. 2378 (2006). Moreover, "the PLRA exhaustion requirement requires ***proper*** *exhaustion*." *Ngo*, 126 S.Ct. at 2387 (emphasis added).

The Supreme Court in *Ngo* determined "[proper exhaustion] means ... that a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." 126 S.Ct. at 2384. The Court further explained "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules [prior to seeking relief from a federal court] because no adjudicative system can function effectively without imposing some orderly structure on the courts of its proceedings.... Construing § 1997e(a) to require proper exhaustion ... fits with the general scheme of the PLRA, whereas [a contrary] interpretation [allowing an inmate to bring suit in federal court once administrative remedies are no longer available] would turn that provision into a largely useless appendage." *Id.* at 2386. This interpretation of the PLRA's exhaustion requirement "carries a sanction" for noncompliance and avoids "mak[ing] the PLRA exhaustion scheme wholly ineffective." *Id.* at 2388. Consequently, a prisoner cannot "proceed ... to federal court" after bypassing available administrative remedies, either by failing to properly exhaust administrative remedies or waiting until such remedies are no longer available, as allowing federal review under these circumstances would impose "no significant sanction" on the

12

prisoner and "the PLRA did not create such a toothless scheme." *Id*.

The record before the court establishes that during the time of Cameron's confinement in the Alabama prison system relevant to this case Prison Health Services, Inc. ["PHS"] provided a grievance procedure for inmate complaints. The undisputed evidentiary materials submitted by defendant Siddiq demonstrate that Cameron failed to file a grievance and properly exhaust the grievance procedure with respect to the actions about which he complains in the instant cause of action. Cameron likewise concedes his failure to utilize the grievance procedure provided by PHS. *Plaintiff's November 6, 2007 Answer to Defendant Siddiq's Special Report - Court Doc. No. 42* at 1 ("Plaintiff did not attempt to file any grievance" with PHS personnel.). The court therefore concludes that the claims for relief presented in this cause of action are subject to dismissal as Cameron did not properly exhaust an administrative remedy previously available to him which is a precondition to proceeding in this court on his claims. *Ngo*, 126 S.Ct. at 2384-2388.

### III. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. The motion for summary judgment filed by defendant Billups be GRANTED.

2. The claims against defendant Billups be dismissed with prejudice.

3. The motion for summary judgment filed by defendant Siddiq be GRANTED to the extent that this defendant seeks dismissal of this case due to the plaintiff's failure to exhaust an administrative remedy.

4. The claims against Dr. Siddiq be DISMISSED in accordance with the provisions of 42 U.S.C. § 1997e(a). *Woodford v. Ngo*, ___ U.S. ___, 126 S.Ct. 2378 (2006).

5. This case be DISMISSED.

6. The costs of this proceeding be taxed against the plaintiff.

It is further

ORDERED that on or before November 21, 2007 the parties may file objections to the Recommendation. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 8th day of November, 2007.

    /s/Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE